[Civ. No. 4316.  Fourth Dist.  Apr. 27, 1951.]

Adoption of BABY BOY PITCHER, a Minor.  JOYCE PITCHER, Appellant, v. STUART L. PARRISH et al., Respondents.

West, Vizzard, Howden & Baker and James Vizzard for Appellant.

Burum, Young & Wooldridge for Respondents.

GRIFFIN, J.—Petitioner, Stuart L. Parrish, and his wife, filed a petition for adoption of Baby Boy Pitcher on December 22, 1949. The child was born to Joyce Pitcher on December 20, 1949. The unwed mother was 16 years of age at the time. She and her mother had known a Dr. Moore, and during appellant's pregnancy they went to him with their problem. They asked for his opinion as to what should be done, and

particularly in reference to the child after its birth. It apparently was agreed by all that adoption, in some good home, was the best thing for all parties concerned.

About December 1st petitioners found out about appellant's desire and after the child's birth they took the child, with the apparent consent of all parties, and later started adoption proceedings. On January 30, 1950, a representative of the State Department of Social Welfare saw appellant relative to obtaining the usual background information and to see about obtaining the written consent of appellant to the adoption. After some private discussion with her the agent told appellant to wait a while and think it over carefully before giving her written consent. The agent returned in March, 1950, and, after some further consultation, appellant signed the written consent. It was, at that time, the opinion of that department, the mother of appellant, her sister, and the probation officer, that the adoption by petitioners was for the best interests of all parties concerned. The appellant was living in a modest home with her mother, who was employed as an assistant cook in a school cafeteria. Appellant attended high school in a small community near Bakersfield.

The form of written consent reads in part as follows:

''I, the undersigned, being the mother of the above-named minor child, and entitled to the sole custody of the said child, according to Section 200 of the Civil Code, do hereby give my full and free consent to the adoption of said child by _____, the petitioners herein, it being fully understood by me that with the signing of this document my consent may not be withdrawn except with court approval.''

On April 19, 1950, appellant, through her mother, as her duly appointed guardian *ad litem*, petitioned the court for permission to withdraw her consent to the adoption on the claimed ground that she was embarrassed and confused at the time of giving her consent and that she was assured by the representative of the Social Welfare Department that she could withdraw her consent by merely writing a letter of wtihdrawal to the judge of the court in which the adoption proceeding was pending; that she is now able to furnish care for the child, either in the home of her mother or in the home of her married sister, and that would be for the best interest of the child.

The Social Welfare Department filed its written report reciting the facts generally as related, and found that the minor

child was receiving good care in the home of petitioner, a young medical doctor, and his wife, who have cared for the child since its birth. Petitioners built a nursery room for the child and completely equipped it with modern equipment. They took out a $2,000 endowment policy for its education. Appellant and her mother were permitted to visit with the child on occasions. The grandmother was pleased with the advantages that petitioners' home would have to offer the child. No objection is made in this respect. The report further recites that the mother of appellant now feels that greater consideration should have been given to appellant's feelings toward her child, and that she and appellant's sister would be now willing to aid her in planning for the child's care. The grandmother offered to quit her employment and receive state aid, or in the alternative, appellant and her child would live with appellant's married sister. The Social Welfare Department ultimately recommended that the court approve the withdrawal of appellant's consent.

In support of the petition to withdraw, appellant testified generally that she was confused and finally signed the consent at the suggestion of her mother, the doctor and others, and that she believed that all she had to do to withdraw it was to write to the judge and so state, and that the court would automatically withdraw it for her and return the baby to her.

The attending doctor testified that it was generally understood by all, during appellant's pregnancy, that the child would be let out for adoption at its birth; that he never heard of any contrary feeling on the part of appellant until about the time the consent was signed. The Social Welfare representative who secured appellant's signature to the consent testified generally that she was of the impression that it was agreeable at that time to both appellant and her mother that appellant sign the consent; that she had previously suggested that she consider it further before signing it; that she did not insist that appellant sign it but she did tell her that "if she signed the consent and wished to withdraw it she could do so by petitioning the Court and offering a suitable plan for the child. At that time there seemed to be no plan other than boarding care for the child, a foster home placement, which her mother and I both felt was not good for the child. Also during that interview she had decided, found out that there was no possibility of a marriage with the (putative) father"; that when appellant wrote to the department at a later date, she suggested that appellant retain an attorney to represent

her. She then testified that ". . . we never take a consent against the wishes of the mother." Other testimony, both pro and con, on the subject was received. At the conclusion of the hearing the court made a minute entry as follows:

"The above entitled cause having been heretofore heard and submitted to the court for consideration and decision, now, after due consideration and being fully advised in both the law and the premises, hereby ORDERS that the petition for withdrawal of consent to adoption is hereby denied." .

Appellant appeals from this order and contends first that the order should be reversed because there never was a valid consent given to the adoption due to the tender years of appellant, due to undue influence exercised upon her, and due to fraud and her mistake, citing section 1578, Civil Code; *In re Cattalini*, 72 Cal.App.2d 662, 669 [165 P.2d 250]; and *Adoption of McDonnell*, 77 Cal.App.2d 805, 812 [176 P.2d 778].

Section 226 of the Civil Code provides in part that:

"A parent who is a minor shall have the right to sign a consent for the adoption of his or her child and such consent shall not be subject to revocation upon such parent reaching his or her majority."

Section 226a then provides: "Once given, consent of the natural parents to the adoption of the child by the person or persons to whose adoption of the child the consent was given, may not be withdrawn except with court approval."

Notwithstanding appellant's testimony, the very document signed by appellant contains the clause: ". . . it being fully understood by me that with the signing of this document my consent may not be withdrawn except with court approval." It is argued in this connection that under the language of section 226a that "If the court finds that withdrawal of the consent to adoption is reasonable in view of all the circumstances, and that withdrawal of the consent will be for the best interests of the child, the court *shall* approve the withdrawal of the consent," it is mandatory for the court to approve withdrawal of the consent under the circumstances here established.

█ After hearing the evidence the court was justified in concluding that appellant knew or should have known that she could withdraw the consent signed by her only upon offering a suitable plan for the child and obtaining court approval of the withdrawal. █ The question as to whether

the consent was obtained under mistake, fraud or undue influence, as well as the question of the reasonableness of the application for the order sought and the questions of the child's best interest and welfare were all factual questions for the trial court to determine. ■ A mere reading of the evidence produced shows that no abuse of discretion appears in the court's ruling. (*In re Adoption of a Minor,* 144 F.2d 644; *Lee* v. *Thomas,* 297 Ky. 858 [181 S.W.2d 457]; *Matter of Bewley,* 167 Cal. 8, 10 [138 P. 689]; *Adoption of Berth,* 79 Cal.App.2d 221; *Guardianship of Peterson,* 64 Cal.App.2d 473 [149 P.2d 65]; *Taber* v. *Taber,* 209 Cal. 755, 756 [290 P. 36].) The cases relied upon by appellant were considered in *In re Barents,* 99 Cal.App.2d 748, 754 [222 P.2d 488], where the court reached the conclusion that they were no longer controlling in the light of the legislative amendments.

Next, appellant complains because the trial court disposed of the issue by a minute order and failed to make specific written findings on the questions involved. She cites section 632, Code of Civil Procedure, and also relies upon a quoted part of section 226a, Civil Code, reading: "If the court *finds* that withdrawal of the consent to adoption is reasonable in view of all the circumstances, and that withdrawal of the consent will be for the best interests of the child, the court shall approve the withdrawal of the consent. . . ." It should be here noted that the section continues to read: "otherwise the court shall withhold its approval. Any order of the court granting or withholding approval of a withdrawal of a consent to an adoption may be appealed from in the same manner as an order of the juvenile court declaring any person to be a ward of the juvenile court."

■ A proceeding for adoption is a special proceeding. (Code Civ. Proc., § 23; *Wells* v. *Zenz,* 83 Cal.App. 137 [256 P. 484]; *In re McGrew,* 183 Cal. 177 [190 P. 804].) ■ In a special proceeding created by statute no written findings are necessary. (*In re Peterson,* 56 Cal.App.2d 791 [133 P.2d 831].) ■ A petition to withdraw consent filed in an adoption proceeding would, of necessity, be of the same character.

In *Carpenter* v. *Pacific Mutual Life Ins Co.,* 10 Cal.2d 307 [74 P.2d 761], it was held that findings are held as necessary only where a statute so provides. It is true that section 226a, *supra,* contains language indicating that the court is to make a determination of fact as to whether or not the withdrawal of consent is reasonable. The mere fact that the word "find" is used in that section cannot be construed to mean that the

court must make a positive written finding of such fact. We conclude that no written finding is required, particularly where the court *withholds* its approval of such withdrawal.

Order affirmed.

Barnard, P. J., and Mussell, J., concurred.